A97A1223. RODGERS v. ST. PAUL FIRE & MARINE INSURANCE COMPANY.
(492 SE2d 268)

BLACKBURN, Judge.

Kevin J. Rodgers appeals the trial court's grant of summary judgment in favor of his uninsured motorist carrier, St. Paul Fire & Marine Insurance Company (St. Paul), in his suit for breach of contract. Rodgers filed his action after St. Paul denied under-insured motorists benefits to him following his settlement with the tortfeasor by execution of a general release. Rodgers was injured when his truck collided with a car driven by an under-insured motorist, Randall McClain. After negotiating a settlement with McClain's insurer for the limits of McClain's policy and executing a general release, Rodgers sought and was refused under-insured motorist benefits under his policy with St. Paul based upon the general release. Rodgers' breach of contract suit against both McClain and St. Paul ensued. Summary judgment was granted as to McClain, but Rodgers did not appeal this portion of the court's ruling. He instead appeals the trial court's grant of summary judgment to St. Paul. We affirm.

On appeal from a trial court's grant of summary judgment, the standard of review by this Court is a de novo review of the evidence. *Gentile v. Bower*, 222 Ga. App. 736 (477 SE2d 130) (1996). In order to prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts and inferences reasonably drawn therefrom, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Gentile*, supra at 736-737.

1. Rodgers claims the trial court erroneously relied upon *Darby v. Mathis*, 212 Ga. App. 444 (441 SE2d 905) (1994), when it granted summary judgment to St. Paul. Rodgers also contends that *Darby*

misconstrues the legislative intent of OCGA § 33-24-41.1. We cannot agree.

The facts in *Darby* are similar to the present case. In *Darby*, following an automobile collision, the Darbys sued Mathis for damages incurred in the collision. They subsequently settled their claims and executed a general release in favor of Mathis and his liability insurance carrier for $15,000. *Darby*, supra at 444. Mathis and the Darbys' own uninsured motorist insurer, Southern Guaranty, then moved for summary judgment based on the release, and the trial court granted the motions. Id.

This Court examined the law of other jurisdictions regarding the liability of a party's uninsured motorist carrier where the party executes a general release in favor of the uninsured motorist, and determined that after the execution of a general release, the Darbys were no longer "legally entitled" to recover from Mathis. Id. at 447. Furthermore, we adopted therein the reasoning that "[w]hen the release was signed, the uninsured motorist carrier was also released as a matter of law because of the derivative nature of the insurance company's liability. Once the plaintiff released all claims against the tortfeasor, there is no basis of liability on which the defendant insurance company can be held responsible under the terms of the policy." (Punctuation omitted.) Id. at 446. In light of the Darbys' general release of Mathis and the wording of their policy with Southern Guaranty, summary judgments for both Mathis and Southern Guaranty were affirmed. We did note, however, that "a pro tanto or partial release expressly reserving [certain] causes of action against Mathis would avoid this result." Id. at 447.

Rodgers' contention that *Darby* misconstrues OCGA § 33-24-41.1, the applicable statute in this case, is without merit. Neither the 1992 version of the statute nor the 1994 amendment negatively impact the analysis of *Darby*. The statute allows a claimant like Rodgers to accept the limits of the other motorist's policy, execute a *limited* release of that party and its insurer, and still retain the right to pursue his own insurer for other available coverage — here, underinsured motorist benefits. The statute clearly and repeatedly refers to a limited release, even in its title, and in that manner reflects the reasoning of *Darby* with respect to "the derivative nature of the insurance company's liability." (Punctuation omitted.) *Darby*, supra at 446.

The limited release provision of OCGA § 33-24-41.1 does not conflict with the requirement that judgment be obtained from the uninsured motorist before proceeding against an uninsured motorist carrier. Under OCGA § 33-24-41.1 (b) (2), the injured party may provide a limited release to the tortfeasor, releasing him from all personal liability "*except* to the extent other insurance coverage is avail-

able which covers such claim or claims." (Emphasis supplied.) The statute further clearly states that such a limited release "shall not . . . [r]elease the tort-feasor from personal liability to the extent that there is other insurance in effect which covers the said claim or claims." OCGA § 33-24-41.1 (d) (4).

Under these statutory provisions, the injured party who executes such a limited release may still proceed to judgment against the tortfeasor. Such a release under those conditions would not bar proceeding against the uninsured motorist carrier. The limited release therefore does not affect the injured party's ability to obtain a judgment against the tortfeasor, but merely limits the tortfeasor's personal liability to the amount of available insurance coverage.

In this case, Rodgers wrote St. Paul's representative two separate letters announcing his intention to settle with McClain's insurance company, Safeway. He further stated he would release his claims against McClain *pursuant to the provisions of OCGA § 33-24-41.1*, and in so doing would retain the ability to pursue St. Paul for under-insured motorist benefits under his policy. Instead, Rodgers, who is an attorney, executed a full and *general* release of his claims, reserving nothing. As a result, when he attempted to collect from St. Paul, St. Paul denied the claim on the basis that its liability was derivative of McClain's, and McClain was no longer subject to liability.

In light of the language contained in Rodgers' policy with St. Paul, the clear requirements of OCGA § 33-24-41.1, and the reasoning of *Darby*, supra, Rodgers defeated his ability to collect under-insured motorist benefits from St. Paul by executing the general release rather than the limited release he had advised St. Paul he was going to execute. Just as in *Darby*, Rodgers' rights to collect from St. Paul under the uninsured/under-insured portion of his policy were dependent upon his legal entitlement to receive damages as a result of an uninsured driver's negligence. The legal entitlement language is contained not only in Rodgers' policy, but, as *Darby* notes, is drawn directly from the uninsured motorist statute itself, OCGA § 33-7-11. See OCGA § 33-7-11 (a) (1). Rodgers is not legally entitled to any damages from McClain after he fully released McClain, and therefore he cannot be entitled to any under-insured motorists benefits under his policy with St. Paul. For this reason, summary judgment was proper.

Additionally, Rodgers' reliance upon *Duncan v. Integon Gen. Ins. Corp.*, 267 Ga. 646 (482 SE2d 325) (1997), is misplaced. In *Duncan*, the Supreme Court discussed the complete compensation rule, "which requires that an insured be completely compensated for his losses before his insurer can exercise a right of subrogation or reimbursement." Id. That court considered the applicability of that rule to

an insurance policy provision requiring an insured to reimburse his insurer for "amounts paid under medical payments coverage," and concluded that "the complete compensation rule does limit the applicability of such a reimbursement provision" in certain circumstances. Id. In this case, by contrast, the complete compensation rule is not at issue. St. Paul is not seeking reimbursement or subrogation for amounts paid to Rodgers under medical payments coverage or any other coverage. *Duncan* therefore provides no support for Rodgers' position, and summary judgment was appropriately granted.

2. Rodgers argues in several enumerations of error that due to St. Paul's failure to respond to his letters regarding settlement and release issues, summary judgment was improper. Rodgers contends that St. Paul's silence amounted to an admission of the propriety of his settling the case, and estopped St. Paul from denying his benefits even though he executed the full release. He further contends that such conduct amounted to a failure by St. Paul to act in good faith and deal fairly with its insured, with the result that Rodgers' intentions as stated in the letters controlled the parties' contract.

The record indicates that in his letters to St. Paul, Rodgers stated that he intended to accept McClain's policy limits *pursuant to OCGA § 33-24-41.1*, release Safeway and McClain, and pursue the balance of his damages with St. Paul. He informed St. Paul that if it disagreed or required special language to be included in the release, it should notify him promptly or be bound to pay him benefits despite his execution of a release pursuant to OCGA § 33-24-41.1. The evidence is uncontroverted that St. Paul did not respond to these letters.

Rodgers' contentions with respect to St. Paul's failure to respond are without merit. Had Rodgers in fact executed a release *pursuant to OCGA § 33-24-41.1*, the release would have been *limited* in accordance with the statute. Rodgers' claims against McClain and St. Paul therefore would have survived the execution of the release. Rodgers' letter to St. Paul required no response, and St. Paul is not bound by Rodgers' misunderstanding of the law. Rodgers has totally failed to demonstrate any breach of its duty by St. Paul much less bad faith or unfair dealing.

3. OCGA § 33-6-34, regarding unfair insurance claims settlement practices, contains no private cause of action. See OCGA § 33-6-37. Therefore, we need not address Rodgers' argument that St. Paul violated this section in some manner by failing to respond to his two letters, and that this alleged violation caused him harm. As determined in Division 2, supra, Rodgers' harm resulted from his failure to act in accordance with his stated intentions and the requirements of OCGA § 33-24-41.1 and not with St. Paul's failure to respond.

4. Rodgers has presented no evidence in support of his claims that the trial court misconstrued his insurance policy by applying the

wrong provision and drew inferences in favor of St. Paul on the motion for summary judgment. The trial court entered no findings of fact and conclusions of law, and the grant of summary judgment itself is not evidence that the trial court acted as Rodgers contends.

5. Rodgers argues that the trial court erred in failing to apply the law of releases as stated in *Lackey v. McDowell*, 262 Ga. 185 (415 SE2d 902) (1992). In *Lackey*, the Supreme Court modified its earlier decision on releases, see *Posey v. Med. Center-West*, 257 Ga. 55 (354 SE2d 417) (1987), and held that "[o]nly those parties *named* in the release will be discharged by that instrument." *Lackey*, supra at 186. Rodgers contends that St. Paul was not named in his release with McClain, and therefore the release cannot operate to discharge St. Paul.

However, this broad language from *Lackey* has no application to the facts of this case. Unlike *Lackey*, which condemned the release of all joint tortfeasors where a written release named only one joint tortfeasor, St. Paul was not a joint tortfeasor in this case. Instead, as stated in Division 1, St. Paul's liability was derivative of, and not in addition to or in concert with, McClain's liability. Because St. Paul could not have any liability separate from McClain's, the extinguishment of McClain's liability through the general release necessarily and unavoidably also extinguished St. Paul's liability. This is so notwithstanding the fact that St. Paul was not named in Rodgers' release to McClain. Rodgers' argument is without merit, and the trial court did not err in granting summary judgment for St. Paul.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

Decided September 12, 1997 — 

*Robert E. Richardson*, for appellant.
*Crim & Bassler, Mitchell S. Evans, Tittsworth, Grabbe & Spillers, Charles L. Spillers*, for appellee.